BRUCE, Appellant, vs. NORTHERN BOILER & STRUCTURAL IRON WORKS, Respondent.

*January 11—January 28, 1913.*

*Master and servant: Injury from defective hoist: Statutory duty of master: Assumption of risk: Contributory negligence: Questions for jury.*

1. Where an employer directed his employee to erect a new smokestack upon a factory building and caused to be furnished for such work the parts of a hoist, consisting of guy ropes, a gin pole, and a tackle, sec. 1636—81, Stats., was applicable and imposed upon the employer the absolute duty to furnish safe, suitable, and proper apparatus for the work.

2. Where in such case the employee was injured through the breaking of one of the guy ropes so furnished, and there was evidence warranting the inferences that the defect in the rope was not so open and obvious that it could be observed by a person of his experience and knowledge by inspecting it with the eye, and that the safety and tensile strength of such rope could have been tested only by means not available to him under the circumstances of his employment, it cannot be held as matter of law that he assumed the risk of its breaking or was guilty of contributory negligence in using it.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Plaintiff seeks to recover damages for personal injuries alleged to have been received by him while in defendant's em-

ploy by reason of defendant's negligence in furnishing defective appliances and in failing to inspect the same.    The defendant is engaged in the business of manufacturing boilers and stacks and putting them in place.    At the time of the accident, April 15, 1910, the plaintiff was forty-three years of age.    He had been employed in the work at which he was engaged at the time of accident for about twenty years.    For four years preceding the accident he worked for the defendant, the last three years as foreman.    About a month before the accident the president and manager of the company directed the plaintiff to erect a new stack upon a long, narrow, flat-roofed building, about thirty feet long, twelve or fourteen feet wide, and twelve feet high, which was built alongside of defendant's main building.    On the day of the accident, in the absence of the manager, the stack, eighteen inches in diameter, about twelve feet long, and weighing 430 pounds, was placed near the building, and the plaintiff directed some of the men to go to the tool house and get a gin pole and three-quarters and seven-eighths inch ropes.    The gin pole was an iron tube about fifteen feet in length and three and one-half inches in diameter.    It weighed fifty or sixty pounds.    Under the plaintiff's direction the pole was set up about three feet from the edge of the roof, so that it projected about three feet over the edge, and was held in place by two guy ropes of the seven-eighths inch rope.    To the upper and projecting end of the pole was fastened a block and tackle, which was attached to the stack.    When the stack had been raised about four feet from the ground one of the guy ropes broke, and the plaintiff was either struck by the falling pole or jumped from the roof to avoid being hit by it, and in falling to the ground sustained a fractured knee joint and other injuries.

The plaintiff's testimony is not clear as to whether he was familiar with the ropes and knew their condition from an inspection by observation.    He testified that he did not use

ropes very often; that he had used ropes whenever he had raised stacks; that he had at various times burned cut or raveled ropes that came to his observation; that he did not consider the ropes unsafe from the looks of them; and that there were other and heavier ropes in the tool house.

There was evidence to the effect that the ropes owned by the defendant were four years old; that the ropes had been inspected by the manager by looking at them; that they had not been tested as to their tensile strength; that the ropes had been loaned to various parties in the city and at times had been exposed to the weather; and that ropes rapidly deteriorate under such conditions.

This is an appeal from the judgment of nonsuit.

The cause was submitted for the appellant on the brief of *Francis S. Bradford,* and for the respondent on that of *Martin, Martin & Martin.*

SIEBECKER, J.  The judgment of the lower court was awarded on the grounds that, under the facts and circumstances shown, the action is controlled by the common-law rules governing the relation of master and servant, and that the case is ruled by the principles applied in the case of *Van den Heuvel v. Nat. F. Co.* 84 Wis. 636, 54 N. W. 1016.  The court held that the master had furnished suitable and safe appliances and material for the construction of the hoist, and that the plaintiff, as foreman of the crew to perform the work, had failed to properly inspect them for ascertaining their fitness and safety and was therefore precluded from recovering damages for the injuries alleged to have been caused by the defective rope.  The case was determined without reference to the liabilities created by sec. 1636—81, Stats., which provides:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or

cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances, which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection, to the life and limb of a person so employed or engaged."

The inquiry is: Do the provisions of this statute apply to this case, and, if so, did the court properly nonsuit the plaintiff? This statute embraces persons employed or directed to perform labor of any kind in the repairing or altering of any building or structure. In this case plaintiff was engaged by the defendant to perform labor in repairing or altering the smokestack on one of defendant's buildings wherein it carried on its business of manufacturing boilers and stacks. As above stated, the mechanical contrivance furnished to raise the smokestack was one composed of a gin pole, guy ropes, and a tackle of ropes and pulleys, which formed a lifting apparatus for raising heavy weights, and in its entirety constituted a hoist. The case presents a situation showing that the plaintiff was engaged by the defendant to perform labor in repairing or altering one of defendant's buildings or structures, and that the defendant caused the parts of a hoist, consisting of ropes, a gin pole, and a tackle, to be furnished to accomplish this work. It seems clear from the facts and circumstances of the case that the plaintiff and the defendant in carrying out this undertaking acted within this statute and that their rights and liabilities are governed thereby.

The statute in terms imposes on the defendant the absolute duty to furnish safe, suitable, and proper apparatus for raising this stack. It was considered in the recent case of *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179, and it was there held that if an employer personally furnished, or through another caused to be furnished, any of the prohibited articles for the purposes specified in the statute, he was liable to the employee for the damages proximately resulting

therefrom to such employee, unless it appeared that the employee assumed the risk or was guilty of contributory negligence.    There is no question that the evidence adduced tends to show that the guy rope which broke was not suitable and safe to afford proper protection to the life and limb of the plaintiff.

Do the facts and circumstances show, as matter of law, that the plaintiff assumed the hazard and risk of this alleged defective rope?    The evidence admits of the inference that the defect in the rope was not so open and obvious that it could be observed by a person of plaintiff's experience and knowledge by inspecting it with the eye.    There is evidence warranting the inference that the safety and tensile strength of the rope could have been tested only by means not available to the plaintiff under the circumstances of his employment.    If these inferences are resolved in plaintiff's favor, then he did not assume the risk incident to the use of the rope, and the defendant is responsible for any failure to properly inspect and test it before furnishing it to the plaintiff for use as directed.    We are persuaded that it cannot be said, as matter of law, upon the evidence now before us, that the plaintiff assumed the risk and hazard incident to the use of this rope in its unsuitable condition.    *Fonder v. General C. Co.* 146 Wis. 1, 130 N. W. 884.

It also follows from these considerations that the evidence does not establish, as matter of law, that the plaintiff was guilty of contributory negligence.    The court improperly nonsuited the plaintiff.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded for a new trial.